IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CLIFTON J. SHOWELL JR.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A. No. 05-462 JJF** |
| | : | |
| **GAMING ENTERTAINMENT (DELAWARE),** | : | |
| **L.L.C., d/b/a MIDWAY SLOTS AND** | : | **JURY TRIAL DEMANDED** |
| **SIMULCAST GAMING ENTERTAINMENT,** | : | |
| **A Delaware Limited Liability Company,** | : | |
| **Defendant.** | : | |

---

### DEFENDANT, GAMING ENTERTAINMENT (DELAWARE) L.L.C.'S
### OPENING BRIEF IN SUPPORT OF ITS MOTION OF SUMMARY JUDGMENT

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Seth. J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor

P. O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Attorneys for Defendant Gaming Entertainment*
*(Delaware) L.L.C.*

Dated: February 29, 2008

## TABLE OF CONTENTS

Page No.

NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

STATEMENT OF FACTS ................................................................... 2

ARGUMENT ................................................................................. 7

A.    THE SUMMARY JUDGMENT STANDARD ................................................ 7

B.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE THAT HE WAS
      TERMINATED BECAUSE OF HIS AGE, RACE, OR SEX. ........................... 8

      1.    Showell has presented no direct evidence that discrimination was a
            motivating factor for his termination. ................................. 9

      2.    Showell cannot establish, under the McDonnell-Douglas burden shifting
            test, that Showell's termination was based on his age, race, or sex ...... 9

            a.    Showell Is Unable to Establish a *Prima Facie* Case of Discrimination. .. 11

            b.    GED's Decision to Terminate Showell Was Based On A
                  Legitimate Non-Discriminatory Business Reason. .................. 16

            c.    Showell Cannot Show By A Preponderance Of The Evidence
                  That The Legitimate, Non-Discriminatory Reason For His
                  Termination Was A Pretext For Discrimination. ................. 17

C.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE THAT HE WAS
      SUBJECT TO A HOSTILE WORK ENVIRONMENT. ................................. 18

D.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S
      CLAIMS FOR PUNITIVE DAMAGES. ............................................. 20

E.    SHOWELL'S TITLE VII CLAIM SHOULD BE DISMISSED BECAUSE
      HE FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES ............... 21

CONCLUSION ............................................................................. 24

DB01:2515592.1                                                              058578.1009

## TABLE OF AUTHORITIES

<u>Cases</u>

<u>Adreani v. First Colonial Bankshares Corp.</u>,
   154 F.3d 389 (7th Cir. 1998) .................................................................................. 16

<u>Aman v. Cort Furniture Rental Corp.</u>,
   85 F.3d 1074 (3d Cir. 1996) .................................................................................. 19

<u>Barnes v. Rozman</u>,
   107 Fed. App'x. 273 (3d Cir. 1997) ..................................................................... 22

<u>Bell v. Waste Mgmt., Inc.</u>,
   No. 03-992-KAJ, 2004 U.S. Dist. LEXIS 21864, (D. Del. Oct. 29, 2004) ................. 15, 16, 19

<u>Bray v. L.D. Caulk Dentsply Int'l</u>,
   2000 U.S. Dist. LEXIS 11062 (D. Del. July 31, 2000) .......................................... 16

<u>Brown v. CSC Logic, Inc.</u>,
   82 F.3d 651 (5th Cir. 1996) .................................................................................. 11

<u>Carter v. Del. State Univ.</u>,
   No. 99-642-GMS, 2002 U.S. Dist. LEXIS 3116 (D. Del. Feb. 27, 2002).................................. 8

<u>Carter v. Del. State Univ.</u>,
   No. 99-642-GMS, 2002 U.S. Dist. LEXIS 3116, (D. Del. Feb. 27, 2002)........................ 11, 20

<u>Celotex Corp. v. Catrett</u>,
   477 U.S. 317 (1986)............................................................................................... 7

<u>Connell v. Consolidated Edison Co. of N.Y., Inc.</u>,
   109 F. Supp. 2d 202 (S.D.N.Y. 2000) .................................................................. 11

<u>E.E.O.C. v. Metal Service Co.</u>,
   892 F. 2d 341 (3d Cir. 1990) ................................................................................. 8

<u>E.E.O.C. v. Rite Aid Corporation</u>,
   C.A. No. 03-cv-777-GMS 2005 U. S. Dist. Lexis *32898 (D. Del. Dec. 12, 2005) ................ 14

<u>Fuentes v. Perskie</u>,
   321 F.3d 759 (3d Cir. 1994) ................................................................................. 16

<u>Hall v. Bell Atl. Corp.</u>,
   152 F. Supp. 2d 543 (D. Del. 2001)...................................................................... 10

<u>Harris v. Forklift Sys., Inc.</u>,
   510 U.S. 17 (1993)................................................................................................ 19

Henson v. Liggett Group, Inc.,
    61 F.3d 270 (4th Cir. 1995) ............................................................... 17

Hilliard v. Morton Bldgs., Inc.,
    195 F. Supp. 2d 582 (D. Del. 2002)...................................................... 9

Horowitz v. Fed. Kemper Life Assurance Co.,
    57 F.3d 300 (3d Cir. 1995) ................................................................. 7

Kolstad v. American Dental Association,
    527 U.S. 526 (1999)................................................................. 20, 21

Lewis v. Okla. ex rel. Bd. of Regents,
    42 Fed. App'x. 160 (10th Cir. 2002) ................................................. 15

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).......................................................................... 8

Mauro v. Southern New England Telecomms.,
    208 F.3d 384 (2d Cir. 2000) ............................................................. 17

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)........................................................................... 9

Medcalf v. Trs. of Univ. of Pa.,
    71 Fed. App'x. 924 (3d Cir. 2003) .................................................... 20

Nixon v. Runyon,
    856 F. Supp. 977 (E.D. Pa. 1994)....................................................... 9

Ocasio v. Lehigh Valley Family Health Ctr.,
    92 Fed. App'x. 876 (3d Cir. 2004) .................................................... 18

Ptasznik v. St. Joseph Hosp.,
    464 F.3d 691 (7th Cir. 2006) .............................................................. 9

Pamintuan v. Nanticoke Mem'l Hosp.,
    No. 96-233-SLR, 1998 U.S. Dist. LEXIS 16764 (D. Del. Oct. 15, 1998) ............................ 7, 8

Proud v. Stone,
    945 F.2d 796 (4th Cir. 1991) ........................................................... 11

Quiroga v. Hasbro, Inc.,
    934 F.2d 497 (3d Cir. 1991) ......................................................... 7, 16

Reeves v. Sanderson Plumbing Prods., Inc.,
    530 U.S. 133 (2000)......................................................................... 10

DB01:2515592.1                                                                                      058578.1009

Richards v. City of Wilmington,
No. 03-106-SLR, 2004 U.S. Dist. LEXIS 4987 (D. Del. Mar. 24 2004) .................................. 7

Richter v. Hook-SupeRx, Inc.,
142 F.3d 1024 (7th Cir. 1998) ........................................................................... 11, 17

Robinson v. Dalton,
107 F.3d 1018 (3d Cir. 1997) ................................................................................. 22

Schoch v. First Fidelity Bancorporation,
912 F.2d 654 (3d Cir. 1990) .................................................................................... 7

Schurr v. Resorts Int'l Hotel,
6 F. Supp 2d 537 (D.N.J. 1998) ............................................................................... 8

Simpson v. Kay Jewelers,
142 F.3d 639 (3d Cir. 1998) .................................................................................. 10

Smart v. Ball State Univ.,
89 F.3d 437 (7th Cir. 1996) ................................................................................... 15

Stavropoulos v. Firestone,,
361 F.3d 610 (11th Cir. 2004) ................................................................................ 15

Stinson v. Del. River Port Auth.,
935 F. Supp. 531 (D.N.J. 1996) ............................................................................... 7

Storey v. Burns Int'l Sec. Servs.,
390 F.3d 760 (3d Cir. 2004) .................................................................................. 15

Taylor v. Proctor & Gamble Dover Wipes Co.,
184 F. Supp. 2d 402 (D. Del. 2002) ........................................................................... 8

Trevino-Barton v. Pittsburgh Nat'l Bank,
919 F.2d 874 (3d Cir. 1990) .................................................................................. 22

Waldron v. SL Indus., Inc.,
56 F.3d 491 (3d Cir. 1995)) .................................................................................. 11

Warner v. FedEx Ground Package System, Inc.,
2005 U.S. App. LEXIS 8173 (3d Cir. 2005) ........................................................ 10, 17, 18

West v. Phila. Elec. Co.,
45 F.3d 744 (3d Cir. 1995) ................................................................................... 19

**Statutes**

42 U.S.C. § 1981 ....................................................................................... 9, 10, 18

DB01:2515592.1                                                                                        058578.1009

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................. 7, 8

DB01:2515592.1                                                          058578.1009

## NATURE AND STAGE OF THE PROCEEDINGS

On or about May 24, 2004, Plaintiff Clifton Showell ("Showell") filed a claim of discrimination with the Delaware Department of Labor and the EEOC against Defendant Gaming Entertainment (Delaware) L.L.C. ("GED"). A Right to Sue Notice was issued by the Delaware Department of Labor on February 28, 2005, following a No-Cause Finding.

On or about July 5, 2005, Showell filed his original Complaint against GED asserting claims for discrimination based on his age, race, and sex. The original Complaint was filed *pro se.* (D.I. 2) On or about January 10, 2006, before an answer was filed, Showell filed a First Amended Complaint ("Amended Complaint") (D.I. 7), this time with counsel representing him. GED filed an Answer to the Amended Complaint on February 21, 2006.(D.I. 9)

The parties have engaged in extensive discovery, exchanging documents and deposing twelve fact witnesses. The parties have also exchanged expert reports. This is GED's Opening Brief in Support of its Motion for Summary Judgment.

## STATEMENT OF FACTS

**Showell's Employment History with GED**

In July 1998, Showell, an African-American male, applied for a position with GED as a slot attendant (Amended Complaint at ¶ 7; A2). At the time he interviewed with GED, he was approximately forty-two years old (Amended Complaint at ¶ 1; A1). Beverly Pope, an African-American female in her forties and the Director of Slot Operations at GED, interviewed Showell. (Dep. Tr. B. Pope at p.20; A15) Showell was hired immediately following his interview by Ms. Pope with the approval Ms. Pope's supervisor, Rich Jefferies, a Caucasian male in his mid-to-late twenties. (Dep. Tr. B. Pope at p.20-22; A15-A17; Dep. Tr. C. Showell at p.45; A53).

As a slot attendant, Showell was responsible for making certain that the slot machines were running, filling the slot machines, paying out jackpots, and maintaining the area assigned to him. (Dep. Tr. C. Showell at p.28; A48 ) At the time he was a slot attendant, slot attendants were only authorized to pay jackpots to customers up to $1,199.00. (Dep. Tr. C. Showell at p.30; A50)

After working as a slot attendant for approximately eighteen months, Showell was promoted to lead slot attendant by Ms. Pope and Mr. Jefferies (Dep. Tr. B. Pope at p.20; A15) with the approval of Mike Vautrin, then General Manager of GED (Dep. Tr. C. Showell at p. 38; A51). Mr. Vautrin is a Caucasian male in his mid-fifties. Id. As a lead slot attendant, Showell was more responsible for customer service. (Dep. Tr. C. Showell at p.29; A49) He also supervised slot attendants and was authorized to pay jackpots up to $5,000.00. (Id.; Dep. Tr. C. Showell at p.44; A52)

After approximately eight months as a lead slot attendant, Showell was again promoted. This time, Mr. Jeffries promoted Showell to slot shift supervisor. (Dep. Tr. C.

2

Showell at p.45; A53) His responsibilities as a slot shift supervisor again increased. Most significantly, his authority to pay jackpots increased from $5,000.00 to $25,000.00. Id.

Showell was eventually promoted from slot shift supervisor to slot shift manager by Ms. Pope. (Dep. Tr. B. Pope at p.29; A18). As slot shift manager, Showell reported to and was evaluated by Daryl Nashold, a Caucasian male in his early fifties, and Ms. Pope (Dep. Tr. C. Showell at p. 48-49; A56 to A57). As a result of his promotion to slot shift manager, Showell was authorized to pay jackpots greater than $50,000.00. (Dep. Tr. C. Showell at p. 74; A64). Showell remained a slot shift manager until his termination in March 2004.

Showell testified that, during his employment with GED, he believed he received fair evaluations from his supervisors. (Dep. Tr. C. Showell at p.46; A54) His employment records indicate that, although he was not a stellar employee, he did receive salary increases every year. (A84 to A89) In 1998, he received a 20% raise because of his promotion from slot attendant to lead slot attendant. In 2000, he received a 6% raise. (A86) In 2001, he received a 3% raise based on his review by Ms. Pope. (A87) In 2002, Showell received a three percent (3%) raise based upon the evaluation prepared by Daryl Nashold. (A88) The following year, however, Showell received a five percent (5%) raise based upon an evaluation also prepared by Mr. Nashold. (A89 to A95) The 2002 and 2003 performance evaluations were approved by Beverly Pope. Id.

**The Institution of a New Computer System**

In December 2003, GED installed a new computer system - an "IGS" system to keep track of all of the slot machines on the gaming floor. (Dep. Tr. T. Dorsey at p.19; A97) The IGS system monitored all of the slot machine activity so that GED could compare the information imported into the IGS system with the information that was recorded at the slot

3

058578.1009

machines themselves. (A101 to 103) At the time the IGS System was implemented, each of the slot shift managers (6), including Showell, was provided with approximately three to four days of training on the IGS system. (Dep. Tr. of B. Pope at p.41; A19; Dep. Tr. S. Jenkins at p.31; A107).

In order to access the IGS system, each employee was required to select a password. (Dep. Tr. B. Pope at p. 43-45; A21 to A23) During the training, the slot shift managers were instructed not to share their IGS passwords. (Dep. Tr. of B. Pope at p.41; A19; Dep. Tr. S. Jenkins at p.31; A107). The IGS passwords allowed slot employees to retrieve money from TDN machines to pay customer jackpots. (Dep. Tr. of B. Pope at p.41; A19). Each slot employee was restricted, through their IGS passwords, in the amount that he/she could access. For example, a slot shift manager, such as Showell, had the authority to pay jackpots in excess of $50,000.00, while a slot attendant was still restricted to paying jackpots less than $1,200.00. (Dep. Tr. Of C. Showell at p.74; A64) A slot shift manager also had authority, through the use of his/her assigned password, to prepare override slips, correct "short pays" and input "hopper slips" that were not entered by a slot attendant within twenty minutes of completing a hopper fill. (Dep. Tr. B. Pope at p.45; A23) These were all responsibilities that slot attendants were not authorized to perform. (Dep. Tr. B. Pope at p.45-46; A23 to A24)

**The Events Leading to Showell's Termination**

On January 14, 2004, Showell was disciplined by GED for failing to attend a mandatory meeting. (A110) The mandatory meeting was scheduled for January 11, 2004. According to Mr. Showell, he knew about the meeting, but refused to attend because he had worked until approximately 3:00 a.m. the same morning and was tired. (Dep. Tr. C. Showell at p.158; A65) Ms. Pope issued a written disciplinary notice and on the form noted that it was his

4

final warning. (A110 to A112)  According to Ms. Pope, Showell refused to sign the final warning.[1]  (Dep. Tr. B. Pope at p.75-76; A37 to A38).

On February 29, 2004, a slot attendant, Georgia Kimball, a Caucasian female, was caught using Showell's IGS password even though Showell was not working that night.  (Dep. Tr. G. Kimball at p.25-26; A118 to A119)  Ms. Kimball short-paid a customer a jackpot by $100.00.  To correct this mistake, Ms. Kimball used Showell's password to override the system and pay the customer the correct amount of the jackpot.  GED security recorded all of this activity on surveillance cameras and confronted Ms. Kimball.  (Dep. Tr. J. Lewis at p.13-14; Dep. Tr. B. Pope at p. 50-55; A125 to A126; A25 to A30)  Ms. Kimball admitted that she used Showell's password to override the jackpot.  (Dep. Tr. G. Kimball at p.25; A118)  She further admitted that Showell, and several other slot shift managers, gave her their IGS passwords. (Dep. Tr. G. Kimball at p.19-20; A116 to 117)

Based on the admissions of Ms. Kimball, GED instituted an internal investigation. (Dep. Tr. B. Pope at p. 50-55; A25 to A30)  On March 4, 2004, Showell was interviewed by the director of security for GED, Jay Lewis, a Caucasian male in his early fifties.  (Dep. Tr. C. Showell at p.172-173; A66 to A67)  Showell admitted to Mr. Lewis that he gave out his IGS password to Ms. Kimball by writing it down on a piece of paper, showing it to her and then scratching it out.  (Dep. Tr. C. Showell at p.172-173; A66 to A67; Dep. Tr. S. Saxon at p. 69; A142)  Showell also admitted that he knew he was not supposed to give out his IGS password to anyone, including other GED employees.  (Dep. Tr. C. Showell at p.175-182; A69 to A76; Dep. Tr. S. Saxon at p. 69; A142)  According to Showell, the reason why he provided his password to

---

[1] Although GED's progressive disciplinary policy requires that a human resources representative be present when a final warning is issued, there was no human resources representative present when Ms. Pope presented his final warning to Showell.

Ms. Kimball was to help him complete his daily assignment to input certain information into the IGS system which could only be done by a supervisor or manager. (Dep. Tr. S. Saxon at p. 69-70; A142 to A143)

As a result of the investigation, Ms. Pope made the decision to terminate Showell. (Dep. Tr. B. Pope at p.58-59; 61; A31 to A32; A34) The termination was based on his providing his confidential password to another slot employee in violation of a GED policy and because Showell already had already been issued a final warning on January 14, 2004. (A147) Ms. Pope replaced Showell with Jonathan Russ, an African-american male in his twenties. (Dep. Tr. of B. Pope at p.69-70).

Two other slot shift managers, Sabrina Jenkins, an African-American female and Brandy Shahan, a Caucasian female, also admitted to giving out their IGS passwords. (A148 to A150; Dep. Tr. S. Jenkins at p.13; A106) Ms. Jenkins and Ms. Shahan received final warnings but were not terminated because, unlike Showell, they did not have final warnings in their personnel files at the time of the incident. (Dep. Tr. B. Pope at p.58; A31) Ms. Kimball also received a final warning for using Showell's IGS password. (Dep. Tr. G. Kimball at p.29; A120) Ms. Jenkins and Ms. Kimball were eventually terminated for committing subsequent policy violations. (Dep. Tr. B. Pope at p.110-111; A41 to A42)[2]

---

[2] Ms. Shahan voluntarily resigned from her employment with GED to enter the military. (Dep. Tr. of D. Nashold at p. 45; A153).

058578.1009

## ARGUMENT

### A.    THE SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the "pleadings, the discovery and

disclosure material on file, and affidavits, show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material," and disputes

"genuine," only if "evidence exists from which a rational person could conclude that the

position of the person with the burden of proof is correct." Richards v. City of Wilmington, No.

03-106-SLR, 2004 U.S. Dist. LEXIS 4987, at *8 (D. Del. Mar. 24 2004) (quoting Horowitz v.

Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 (3d Cir. 1995)).

In an action brought under Title VII, a defendant is entitled to summary judgment

when it demonstrates either: "(1) that the plaintiff is unable to establish a *prima facie* case of

discrimination; or (2) if the plaintiff can establish a *prima facie* case, the plaintiff cannot produce

sufficient evidence from which a fact finder could infer that the defendant's legitimate, non-

discriminatory reason for [taking adverse employment action against] plaintiff was a pretext."

Pamintuan v. Nanticoke Mem'l Hosp., No. 96-233-SLR, 1998 U.S. Dist. LEXIS 16764, at *41

(D. Del. Oct. 15, 1998) (citing Stinson v. Del. River Port Auth., 935 F. Supp. 531, 539 (D.N.J.

1996)).

Furthermore, the non-movant may not "rest upon mere allegations, general

denials, or . . . vague statements." Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991);

Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported

allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary

judgment"). To defeat a summary judgment motion, Rule 56(c) requires the non-moving party to:

> [D]o more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' [W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal citation omitted); see also Taylor v. Proctor & Gamble Dover Wipes Co., 184 F. Supp. 2d 402, 408 (D. Del. 2002) ("mere scintilla of evidence in support of non-moving party is insufficient"); Richards, 2004 U.S. Dist. LEXIS 4987, at *11-12 ("There must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.") Measured against this standard, all of Showell's claims fail as a matter of law.

**B.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE THAT HE WAS TERMINATED BECAUSE OF HIS AGE, RACE, OR SEX.**

GED is entitled to summary judgment on Counts I through III of Showell's Amended Complaint because he cannot establish the essential elements of his discrimination claims. Under Title VII cases, a claim for discrimination can be proven two ways: by direct evidence that discrimination was a motivating factor for the adverse employment action, or through indirect evidence.[3] E.E.O.C. v. Metal Service Co., 892 F. 2d 341, 347 (3d Cir. 1990); Carter v. Del. State Univ., No. 99-642-GMS, 2002 U.S. Dist. LEXIS 3116 at *13, *17 (D. Del. Feb. 27, 2002).

---

[3]In the Third Circuit, the elements of employment discrimination under Title VII and 42 U.S.C. § 1981 are identical. Schurr v. Resorts Int'l Hotel, 16 F. Supp. 2d 537, 556 (D.N.J. 1998) ("If a plaintiff's Title VII claims are dismissed on summary judgment, his § 1981 claim also fails."); Parmintuan, 192 F.3d 378 (holding that Title VII and 42 U.S.C. § 1981 are to be consistently interpreted). Therefore, Showell's § 1981 claims will not be separately addressed herein.

1.    **SHOWELL HAS PRESENTED NO DIRECT EVIDENCE THAT DISCRIMINATION WAS A MOTIVATING FACTOR FOR HIS TERMINATION.**

Under the direct method, a plaintiff can show that his employer's termination decision was motivated by a discriminatory purpose by presenting direct evidence of discrimination, such as an outright admission from the employer or circumstantial evidence that points directly to a discriminatory reason for the termination decision. Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 695 (7th Cir. 2006) "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." Nixon v. Runyon, 856 F. Supp. 977, 983 (E.D. Pa. 1994) In this case, Showell has not presented any direct evidence that his age, race, or gender was a motivating factor for Ms. Pope's decision to terminate him. In fact, when asked at his deposition for facts that supported his belief that Ms. Pope terminated him because of his age, race, or sex, he could recite none. Therefore, Showell cannot show through direct evidence, that his termination was motivated by a discriminatory purpose.

2.    **SHOWELL CANNOT ESTABLISH, UNDER THE MCDONNELL-DOUGLAS BURDEN SHIFTING TEST, THAT SHOWELL'S TERMINATION WAS BASED ON HIS AGE, RACE, OR SEX.**

In Title VII and § 1981 cases, a defendant is entitled to summary judgment if it can demonstrate that the plaintiff cannot carry his burden of proof under the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hilliard v. Morton Bldgs., Inc. 195 F. Supp. 2d 582, 586 (D. Del. 2002) (holding that discrimination claims under Title VII and 42 U.S.C. § 1981 are analyzed under the framework set forth by the Supreme Court in McDonnell Douglas). Under the McDonnell Douglas burden-shifting framework, the plaintiff has the burden to establish a *prima facie* showing of discrimination. Id. If the plaintiff

9

can establish a *prima facie* case, the burden then shifts to the defendant to establish a legitimate, non-discriminatory business reason for its actions.  Id.; see also Hall v. Bell Atl. Corp., 152 F. Supp. 2d 543, 550 (D. Del. 2001).  "This burden is one of production, not persuasion; 'it can involve no credibility assessment.'"  Warner v. FedEx Ground Package System, Inc., 2005 U.S. App. LEXIS 8173 at **4 (3d Cir. 2005)(quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).

After the defendant has set forth its legitimate, non-discriminatory reason, the presumption of discrimination "drops from the case," and the burden shifts back to the plaintiff, who must show that the defendant's proffered motivation is only a pretext to mask discrimination.  Id.  To meet this burden, the plaintiff must "cast sufficient doubt" upon the defendant's proffered reasons to permit a reasonable fact-finder to conclude that the reasons are fabricated.  Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (defendant must "point to a weakness, inconsistency, or contradiction" that renders the defendant's proffered rationales "unworthy of credence").  "Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves, 530 U.S. at 143.

Showell has not met his burden of establishing a *prima facie* case of discrimination.  Additionally, he is unable to rebut GED's legitimate, non-discriminatory business reason for terminating him.  GED is, therefore, entitled to summary judgment on Showell's claims of race discrimination under Title VII and § 1981.

a.    **Showell Is Unable to Establish a *Prima Facie*
Case of Discrimination.**

To establish a *prima facie* claim of discrimination, Showell must first establish a

*prima facie* case by showing that: (1) he is a member of a protected class; (2) he was qualified

for the position; and (3) he was subject to an unfavorable employment action "under

circumstances that give rise to an inference of unlawful discrimination." Carter, at \*17 quoting

Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995). Because he cannot satisfy the third

prong of this test, that the circumstances of his termination gives rise to an inference of unlawful

discrimination, he cannot establish a *prima facie* case of discrimination.

Beverly Pope, an African-American female who is older than Showell, was the

individual who made the decision to terminate him. Ms. Pope was also the individual who

interviewed, hired, and promoted Showell throughout his career with GED. Ms. Pope also

consistently gave Showell favorable year-end reviews. Where the person responsible for hiring

was also instrumental in the decision to discharge the plaintiff, there can be no inference of

discrimination. Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991). Furthermore, the age of the

decision maker (Ms. Pope) serves to discount any suggestion of discriminatory animus. See

Richter v. Hook-SupeRx, Inc., 142 F.3d 1024,1032 (7th Cir. 1998) (no discrimination where

decision maker same age as or older than plaintiff); Connell v. Consolidated Edison Co. of N.Y.,

Inc., 109 F. Supp. 2d 202 (S.D.N.Y. 2000). The combination of Ms. Pope's age, race, and role

in the hiring and termination process further enhances the inference that discrimination was not

the motive behind plaintiff's discharge. Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir.

1996)(The fact that the actor involved in both employment decisions is also a member of a

protected class enhances the inference). Ms. Pope made the decision to terminate Showell

because he admittedly committed a serious violation of GED's policy by releasing his IGS

11

password to a subordinate. This policy violation created the potential for disaster. Showell, as a slot shift manager, had the authority to access money to pay jackpots in excess of $50,000.00, well above his subordinate's authority. By giving his password to a subordinate, it is quite feasible that the subordinate could have stolen significant amounts of money from GED.

Furthermore, Showell never testified that he believes Ms. Pope was biased toward him or African-Americans, older individuals, or males in general. He also could not articulate any reason for his belief that Mr. Nashold discriminated against him. He just "believes" he did. (Dep. Tr. C. Showell at p.52-55, A58 to A61) The fact that Showell admits that neither the decision maker responsible for his termination nor his direct supervisor were biased towards him for any reason disproves any inference of discrimination. Therefore, he cannot establish a *prima facie* case of discrimination based on these facts.

Showell also alleges in his Amended Complaint that in 2002 Ms. Pope gave him a favorable annual evaluation but that Mr. Nashold, Showell's direct supervisor, tore up the evaluation and voided Showell's raise does not create an inference of unlawful discrimination. Although Mr. Nashold and Ms. Pope deny this allegation, even if true, it does not raise an inference that he was subject to unlawful discrimination. First, Ms. Pope, not Mr. Nashold made the decision to terminate Showell. Second, the incident described by Showell was in 2002, two years prior to his termination. Lastly, Mr. Nashold gave Showell a five percent raise the following year. Without more, this unsupported allegation fails to establish a *prima facie* case of discrimination.

Showell also alleges that his termination was discriminatory because Ms. Jenkins and Ms. Shahan, who gave out their IGS passwords, and Ms. Kimball, who used Showell's password, were not disciplined or discharged. (Plaintiff's Interrogatory Answer No. 8; A160)

12

Contrary to Showell's unsupported allegation, Ms. Jenkins, Ms. Shahan, and Ms. Kimball were all disciplined. Ms. Jenkins and Ms. Shahan received final warnings for giving out their IGS passwords, and Ms. Kimball received a final warning for using Showell's IGS password. (A174 to A183; A148; Dep. Tr. G. Kimball at p. 29; A120) Furthermore, every slot shift manager received a written notice that, if they shared their IGS password, they would be terminated. (A243) And, like Showell, Ms. Jenkins and Ms. Kimball were both eventually terminated as a result of subsequent violations of GED policy following their respective final warnings. (A177 to A183)

Showell also claims that GED violated its progressive disciplinary policy because it did not issue a first, second, or third written warning prior to terminating him. He claims that the failure to follow this policy was an unlawful discriminatory act.

At the time of Showell's termination, GED had a progressive disciplinary policy consisting of several steps that generally needed to be completed before an employee could be terminated. (A184 to A188) The steps included a verbal warning, a second and third written warning and a final written warning. Scott Saxon, GED's Director of Human Resources, testified at his deposition that it was not a *requirement* that first, second, or third written warnings be issued before a final warning could be issued. (Dep. Tr. S. Saxon at p. 36-44; A244 to A252) (emphasis added) Rather, the level of discipline was contingent on the seriousness of the employee's action. Id.

In this case, Showell received a final warning on January 14, 2004 for failing to attend a mandatory meeting. He admits to giving his IGS password to a subordinate and admits that such action was a violation of GED policy. Whether or not GED properly followed its progressive disciplinary policy, without more, does not establish a *prima facie* case of

13

discrimination. <u>E.E.O.C. v. Rite Aid Corporation,</u> C.A. No. 03-cv-777-GMS 2005 U. S. Dist.
Lexis *32898 (D. Del. Dec. 12, 2005). Moreover, whether titled as a first, second, or third
written warning, Showell had received *several* disciplinary memos between April 24, 2003 and
March 11, 2004. (A189 to A208)

Showell offers no facts to support his claim that a) GED failed to follow its
progressive disciplinary policy and, b) if there was a failure by GED to follow its progressive
disciplinary policy, that such failure was based on his race, age, or sex. Therefore, no inference
can be drawn from his allegation that his termination was based on unlawful discrimination and,
as a result, he cannot prove a *prima facie* case of discrimination.

Showell makes one additional allegation as support for his claim that GED
unlawfully discriminated against him. Showell alleges that he was denied a demotion request
when he had to undergo dental surgery to have his teeth removed. Showell alleges that instead
of granting his demotion request, GED made him take an unpaid leave of absence so that he
would not work on the casino floor without his teeth. (Amended Complaint at ¶¶ 39-43)
According to Showell, two female managers were permitted to take a demotion because of
medical issues. (<u>Id.</u>) Because Showell's factual allegations are incorrect and because he was not
subject to an adverse employment action, he has not shown that his termination was as a result of
unlawful discrimination.

The factual allegations in his Amended Complaint are wrong and the record in
this case proves it. First, GED would have permitted Showell to work on the casino floor
without teeth. (Dep. Tr. S. Saxon at p. 51-53; A132 to A134; Dep. Tr. B. Pope at p.92-93; A39
to A40) Second, Showell himself requested to take a leave of absence until he had his false teeth
because he did not want to be on the casino floor without his teeth. (Dep. Tr. C. Showell at

14

p.209; A77)  Lastly, neither Ms. Burrell or Ms. Clendaniel requested a demotion as a result of their respective medical conditions nor did they receive a demotion because of their medical conditions. (Dep. Tr. S. Saxon at p. 58-62; A137 to A141)

Moreover, even if Showell was denied a demotion, this allegation is insufficient to form the basis for a discrimination charge.  Showell's claim that GED discriminatorily refused to demote him fails as a matter of law because he has not shown that he "suffered an adverse job action."  See e.g., Bell v. Waste Mgmt., Inc., No. 03-992-KAJ, 2004 U.S. Dist. LEXIS 21864, at *12 (D. Del. Oct. 29, 2004) (citing McDonnell Douglas, 411 U.S. at 802); see also, Stavropoulos v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004) (failure to show adverse employment action was fatal to plaintiff's claim); Lewis v. Okla. ex rel. Bd. of Regents, 42 F. App'x. 160, 167 (10th Cir. 2002) (summary judgment was appropriate where plaintiff failed to show adverse employment action).  The Third Circuit defines an adverse employment action as an action by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760 (3d Cir. 2004) (internal citations omitted).  Further, the action must have an actual impact on the employment relationship.  Id. at 389.  The Third Circuit has made clear that plaintiffs must demonstrate a materially adverse employment action.  Not everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.  Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)  GED's refusal to demote Showell cannot be considered an action that affected his "compensation, terms, conditions, or privileges of employment," deprived him of "employment opportunities," or "adversely affected his status as an employee."  Therefore, Showell's claim fails to meet the required standard.

15

Showell admits that he has "no facts" showing that race, age, or sex was a factor in the decision to eliminate his position and his "opinion," or incorrect assumptions and unsupported factual allegations are simply insufficient. As this Court has noted, "[s]peculation alone cannot establish a prima facie case of discrimination." Bray v. L.D. Caulk Dentsply Int'l, 2000 U.S. Dist. LEXIS 11062 at *15 (D. Del. July 31, 2000). Showell's conclusory allegations are inadequate substitutes for the required proof. Id. See Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 397 (7th Cir. 1998) Showell has failed to articulate any facts in the record giving rise to an inference of discrimination. Showell's mere allegation that he was treated unfairly because he is an older African-American male is simply insufficient to create the required discriminatory inference. Quiroga, 934 F.2d at 500. For all of the above reasons, Showell has failed to establish a *prima facie* case of discrimination.

**b.    GED's Decision to Terminate Showell Was Based On A Legitimate Non-Discriminatory Business Reason.**

Even assuming that Showell can establish a *prima facie* case of discrimination, the burden then shifts to GED to articulate a legitimate, non-discriminatory reason for the decision to terminate him. Bell at *13. "The employer satisfies its burden of production by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 321 F.3d 759, 763 (3d Cir. 1994). GED's decision to terminate Showell was based on a legitimate non-discriminatory business reason. GED terminated Showell because he admittedly, in violation of a GED policy, released his confidential IGS password to a subordinate and at the time he did so, he already had a final warning in his personnel file. Furthermore, Showell had become a problem employee, receiving more than nine warnings in an eleven month period. There has been no evidence that contradicts these facts. Regardless of whether Showell agrees with GED's

16

decision to terminate him, GED's legitimate business decision cannot form the basis of a claim of unlawful discrimination. See Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."). Because GED's decision to terminate Showell was based legitimate, non-discriminatory reason, GED has met its burden of production. Furthermore, because Showell cannot establish that the stated reason – his release of his confidential IGS password – was a pretext to mask any discriminatory basis for his termination – GED is entitled to judgment as a matter of law.

**c.    Showell Cannot Show By A Preponderance Of The Evidence That The Legitimate, Non-Discriminatory Reason For His Termination Was A Pretext For Discrimination.**

Summary judgment for the defendant is appropriate where the plaintiff cannot raise genuine questions about the legitimacy of the employer's articulated reason for terminating the plaintiff. Mauro v. Southern New England Telecomms., 208 F.3d 384 (2d Cir. 2000). See also Richter v. Hook-SupeRx, Inc., 142 F.3d 1024,1030-31 (7th Cir. 1998) (summary judgment granted where plaintiff offered no evidence that defendant's reasons for discharging him were unworthy of belief). If the plaintiff argues that the employer's articulated reason legitimate reason is not true, the plaintiff cannot survive summary judgment by arguing that the employer's decision was wrong or mistaken. Warner, at **5. Instead, he must demonstrate that the reason was so wrong that the proffered reason could not have been the real reason. Id. If the plaintiff seeks to overcome the employer's proffered non-discriminatory reasons by arguing that discrimination played a motivating role in the employer's decision, the plaintiff must point to

17

evidence that proves discrimination in the same way that facts are generally proven – based solely on the natural probative force of the evidence. Id. at **6.

Since GED's reasons for terminating Showell was based on a legitimate, non-discriminatory business reason, summary judgment should be granted to GED. Presumably Showell will direct this Court to the same evidence that he claims supports his inference that unlawful discrimination was the motivating factor for his termination. As was demonstrated above, Showell's "facts" are wrong. The actual evidence that was developed during discovery, through the deposition testimony and company records, shows that Showell was terminated because he admitted to violating a GED policy and because, at the time of this admission, he already had a final warning in his personnel file. Furthermore, the other slot shift managers who committed the same policy violation were disciplined, as was the slot attendant who used Showell's password. The remainder of Showell's allegations have been shown to be untrue. Therefore, Showell has not carried his burden to show, by a preponderance of the evidence, that the legitimate, non-discriminatory reason proffered by GED was so wrong that the proffered reason could not have been the real reason for his termination.

## C.     PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE THAT HE WAS SUBJECT TO A HOSTILE WORK ENVIRONMENT.

Counts IV through VI of Showell's Amended Complaint allege that he was subject to a hostile or abusive work environment based on his age, race, and sex. Despite these conclusory allegations, Showell has failed to produce any evidence to support them. Without evidence of "severe" and "pervasive" conduct attributable to GED, Showell's hostile environment claims under Title VII and § 1981 must be dismissed. See Ocasio v. Lehigh Valley Family Health Ctr., 92 F. App'x. 876, 879 (3d Cir. 2004) (applying the same standards to hostile environment claims under both Title VII and § 1981); Harris v. Forklift Sys., Inc., 510 U.S. 17

18

(1993) (establishing the criteria for defining a "hostile" environment). "In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996) (internal citations omitted), (quoted in Bell, 2004 U.S. Dist. LEXIS 21864, at *16). A plaintiff must establish that (1) he suffered intentional discrimination because of race, age or sex; (2) such discrimination was pervasive and regular; (3) he was detrimentally affected by such discrimination; (4) the discrimination would have detrimentally affected a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. Id., (citing West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). A determination of whether an environment is "hostile" or "abusive" can be determined only by examining at the circumstances. Bell, 2004 U.S. Dist. LEXIS 21864, at *17. The Supreme Court has emphasized the following factors in this determination: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

Showell's Amended Complaint makes no specific factual allegations to support his hostile environment claims. He was repeatedly asked in his deposition what facts he had to support his claim that he was discriminated against because of his age, race, or sex – Showell could point to none. In his answers to interrogatories, he referred to the assertions alleged in his Amended Complaint for support that he was subject to a hostile work environment.

(Interrogatory Answers 7-8; A160)  These assertions have already been proven in the record, as explained above, not to be true.

Showell has not presented any facts that satisfy the elements necessary to prove his hostile work environment claim.  He has not shown that (1) he suffered intentional discrimination because of race, age or sex; (2) such discrimination was pervasive and regular; (3) he was detrimentally affected by such discrimination; (4) the discrimination would have detrimentally affected a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.  Showell's reliance on assertions which have been disproved in the record cannot sustain his hostile work environment claim.  Therefore, GED is entitled to judgment as a matter of law.

## D.    SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES.

In Kolstad v. American Dental Association, the U.S. Supreme Court held that punitive damages may be recovered in claims under Title VII for cases involving intentional discrimination "where the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 527 U.S. 526, 534 (1999) (internal citations omitted); see also Carter, at *30.  An employer can be liable for punitive damages for its employee's actions if (1) its agent is employed in a managerial capacity; (2) the agent acts within the scope of employment; and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff.  Medcalf v. Trs. of Univ. of Pa., 71 F. App'x. 924, 932 (3d Cir. 2003), citing Kolstad, 527 U.S. at 535-45.  However, an "employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." Kolstad at 545.

20

Count IV-VI of Showell's Amended Complaint state that "[b]ecause of the willful and malicious acts of the Defendant and/or its officers and agents, in gross disregard of the civil rights and well-being of the Plaintiff, Plaintiff is entitled to punitive and exemplary damages." Under Kolstad, however, an employer is not necessarily liable for punitive damages even if the Court concludes that a manager has engaged in intentional discrimination in violation of Title VII. 527 U.S. at 546. If the employer establishes that it acted in good faith to comply with Title VII, and that the plaintiff has failed to "identify facts sufficient to support an inference that the requisite mental state can be imputed to the Company," punitive damages are not awardable. Id.

First, there are no facts to support his allegation that GED, or any of its employees, committed any willful or malicious acts in gross disregard of Showell's civil rights and well-being. Second, the undisputed record in this case shows that GED had in effect an anti-discrimination policy and that Showell received the policy. (A209 to A238). Further, Showell himself concedes that Beverly Pope, the person who decided to terminate him, acted without any discriminatory reasons. Given Showell's admission, there is simply no basis to conclude that GED acted with the requisite intent. Under such circumstances, it is clear that GED acted in good faith and without discriminatory intent. Summary judgment should therefore be granted on Showell's claim for punitive damages.

## E.    SHOWELL'S TITLE VII CLAIM SHOULD BE DISMISSED BECAUSE HE FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

The Court should dismiss Showell's Title VII claims because he failed to exhaust his administrative remedies prior to filing this action. Showell asserts claims race and sex discrimination under Title VII of the Civil Rights Act of 1964. Showell filed a charge of discrimination with the Delaware Department of Labor ("DDOL") which was "dual-filed" with the Equal Employment Opportunity Commission ("EEOC") on May 24, 2004. (A240 to A242)

21

On or about February 28, 2005, the DDOL issued its No-Cause Determination and a Right to Sue Notice. (A239) The DDOL's Right to Sue Notice specifically instructed Showell that if his case was also filed with the EEOC, he was permitted to request a federal Right to Sue Notice from the EEOC. (Id.)

GED, in its interrogatories, requested every document sent to or received from the EEOC and the DDOL. Showell referred to his documents produced at bates number P106-116 and P285-491. (Interrogatory No. 6; A159) Upon a review of Showell's documents, no federal Right to Sue Notice has been produced by Showell. At his deposition, Showell was asked if he received any federal Right to Sue Notice to which he responded that he could not recall. (Dep. Tr. C. Showell at p.284; A79) He also did not attach a federal Right to Sue Notice to his Amended Complaint.

It is a basic tenet of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief. See Robinson v. Dalton, 107 F.3d 1018, 102 (3d Cir. 1997). The rule is meant to "provide courts with the benefit of an agency's expertise and serve judicial economy by having the administrative agency compile the factual record." Id. This requirement is specifically enumerated in the statutory language of Title VII. Prior to filing suit in federal court under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the appropriate state and/or federal agency. See 42 U.S.C. § 2000e-5(f)(1); Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 878-79 (3d Cir. 1990).

The Third Circuit has held that "[t]he jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC [or PHRC] and the receipt of the Commission's statutory notice of the right to sue") Barnes v. Rozman, 107 Fed. App'x. 273, 274 (3d Cir. 1997). In this case, Showell has not produced any proof that he has received a Right to Sue

22

Notice from the EEOC.  As a result, he has not satisfied the jurisdictional prerequisites to filing a

suit under Title VII and, therefore, his claims of race and sex discrimination.

DB01:2515592.1

058578.1009

## CONCLUSION

For the reasons set forth above, GED respectfully requests that summary

judgment be granted and Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Seth J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6666; 571-6706
Facsimile: (302) 576-3345; 576-3442
Email: bwilloughby@ycst.com; sreidenberg@ycst.com
*Attorneys for Defendant Gaming Entertainment (Delaware) L.L.C.*

Dated:  February 29, 2008

DB01:2515592.1                                            058578.1009