# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **CLIFTON J. SHOWELL JR.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A. No. 05-462 JJF** |
| | : | |
| **GAMING ENTERTAINMENT (DELAWARE),** | : | |
| **L.L.C., d/b/a MIDWAY SLOTS AND** | : | **JURY TRIAL DEMANDED** |
| **SIMULCAST GAMING ENTERTAINMENT,** | : | |
| **A Delaware Limited Liability Company,** | : | |
| **Defendant.** | : | |

## DEFENDANT, GAMING ENTERTAINMENT (DELAWARE) L.L.C.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION OF SUMMARY JUDGMENT

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Seth. J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor

P. O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Attorneys for Defendant Gaming Entertainment*
*(Delaware) L.L.C.*

Dated: March 24, 2008

## TABLE OF CONTENTS

**Page No.**

ARGUMENT .................................................................................................................... 1

A.   SHOWELL CANNOT ESTABLISH A PRIMA FACIE CLAIM FOR
     DISCRIMINATION BASED ON HIS SEX, AGE, OR RACE. ......................................... 2

     1.   Showell Cannot Establish A *Prima Facie* Case Of Sex Discrimination. ............... 4

     2.   Showell Cannot Establish A *Prima Facie* Case Of Age Discrimination. ............... 6

     3.   Showell Cannot Establish A *Prima Facie* Case Of Race Discrimination. ............. 7

B.   SHOWELL DOES NOT CAST SUFFICIENT DOUBT UPON THE
     LEGITIMATE, NON-DISCRIMINATORY REASON FOR HIS
     TERMINATION. ................................................................................................... 8

     1.   Showell Does Not Cast Sufficient Doubt Upon The Legitimate
          Reason Proffered By GED To Allow The Fact Finder To Conclude
          That The Reason Was Fabricated. ......................................................... 9

     2.   Showell Has Not Presented Evidence That Would Allow A Fact
          Finder To Infer That The Decision To Terminate Him Was Motivated
          By Discrimination. ............................................................................. 12

          a.   Showell's "Evidence" Of Sex Discrimination Is Insufficient
               To Allow A Fact Finder To Infer That He Was Terminated
               Because Of His Sex. ................................................................ 13

          b.   Showell's "Evidence" Of Race Discrimination Is Insufficient
               To Allow A Fact Finder To Infer That He Was Terminated
               Because Of His Race. ............................................................... 14

          c.   Showell's "Evidence" Of Age Discrimination Is Insufficient
               To Allow A Fact Finder To Infer That He Was Terminated
               Because Of His Age. ................................................................ 15

          d.   Showell's "Other Evidence" Of Discrimination Does Not
               Overcome The Legitimate, Non-Discriminatory Reason For
               Showell's Termination. ............................................................. 16

C.   GED IS ENTITLED TO SUMMARY JUDGMENT ON SHOWELL'S
     CLAIMS OF SEX AND RACE DISCRIMINATION IN THE TERMS
     AND CONDITIONS OF HIS EMPLOYMENT .................................................. 17

i

|   | 1. | Showell Cannot Show That He Was Discriminated Against In The Terms And Conditions Of His Employment Based On His Sex. .................. 17 |

|   | 2. | Showell Cannot Show That He Was Discriminated Against In The Terms And Conditions Of His Employment Based On His Race. ........................ 18 |

D.   GED WITHDRAWS ITS ARGUMENT THAT SHOWELL DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES BASED ON THE NEWLY PRODUCED RIGHT TO SUE NOTICE.......................................................... 19

CONCLUSION............................................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

Aljadir v. Substitute Teacher Service,
   C.A. No. 02-464 GMS,
   2004 U.S. Dist. LEXIS 19879 (D. Del. Oct. 5, 2004) ............................................................... 5

Allen v. Ohio Department of Rehabilitation and Correction,
   128 F. Supp. 2d 483 (2001) ....................................................................................................... 5

Anderson v. Haverford College,
   868 F. Supp. 741 (E.D. Pa. 1994) ............................................................................................. 5

Bell v. Waste Mgmt., Inc.,
   No. 03-992-KAJ, 2004 U.S. Dist. LEXIS 21864,  (D. Del. Oct. 29, 2004) ............................ 18

Brown v. CSC Logic, Inc.,
   82 F.3d 651 (5th Cir. 1996) ....................................................................................................... 3

Carson v. Bethlehem Steel Corp.,
   82 F. 3d 157 (7th Cir. 1996) ...................................................................................................... 1

Connell v. Consolidated Edison Co. of N.Y., Inc.,
   109 F. Supp. 2d 202  (S.D.N.Y. 2000) ...................................................................................... 3

Dial v. Astropower,
   C.A. No. 98C-08-150-WTQ, 1999 Del. Super. LEXIS 548 (Del. Super. 1999) ....................... 1

E.E.O.C. v. Rite Aid Corporation.,
   C.A. No. 03-CV-777-GMS, 2005 U.S. Dist. LEXIS 32898 (D. Del. Dec. 12, 2005) .............. 17

Fuentes v. Perskie,
   32 F. 3d 759 (3d Cir. 1994) ....................................................................................................... 9

Gaetano v. Bayer, Inc.
   C.A. No. 04-1812,
   2007 U.S. Dist. LEXIS 82971 (W. D. Pa. 2007) ....................................................................... 4

Grosjean v. First Energy Corp.,
   349 F.3d 332 (6th Cir. 2003) ..................................................................................................... 6

Haney v. Laub,
   312 A. 2d 330 (Del. Super. 1973) .............................................................................................. 1

Keller v. Orix Credit Alliance, Inc.,
   130 F.3d 1101 (3d Cir. 1997) .................................................................................................... 1

DB01:2530462.1 058578.1009

Lewis v. Okla. ex rel. Bd. of Regents,
    42 Fed. App'x. 160 (10th Cir. 2002) ....................................................................... 18

Mauro v. Southern New England Telecomms.,
    208 F.3d 384 (2d Cir. 2000) .................................................................................... 8

McDonnell-Douglas Corp.,
    411 U. S. 792 (1973)........................................................................................ 2, 12

McIntyre v. City of Wilmington,
    C.A. 01-396, 2002 U.S. Dist. LEXIS 14569 (D. Del. July 9, 2002) ......................... 4

Miller v. State of Del.,
    158 F. Supp. 2d 406 (D. Del. 2001)......................................................................... 5

Monaco v. Am. Gen. Assur. Co.,
    359 F3d 296 (3d Cir. 2004) ..................................................................................... 4

Mosberger v. CPG Nutrients,
    C.A. No. 01-100, 2002 U.S. Dist. LEXIS 22254, (W.D. Pa. Sept. 6, 2002) ............. 3

Richter v. Hook-SupeRx, Inc.,
    142 F.3d 1024 (7th Cir. 1998) ............................................................................ 3, 6

Simpson v. Kay Jewelers, Div. of Sterling, Inc.,
    142 F. 3d 639 (3d Cir. 1998) ...................................................................... 5, 12, 15

Stavropoulos v. Firestone,,
    361 F.3d 610 (11th Cir. 2004) ............................................................................... 18

Waldron v. SL Indus., Inc.,
    56 F.3d 491 (3d Cir. 1995)) ..................................................................................... 2

DB01:2530462.1

058578.1009

**ARGUMENT**

It is well-settled that Delaware is an employment at-will state. <u>Haney v. Laub</u>, 312 A. 2d 330, 332 (Del. Super. 1973). As such, an employer can terminate an employee with or without cause. <u>Dial v. Astropower</u>, C.A. No. 98C-08-150-WTQ, 1999 Del. Super. LEXIS 548 (Del. Super. 1999). And the fact that an employee does not agree with his/her termination does not, in and of itself, automatically give rise to a claim of discrimination. As has been stated numerous times, "Federal Courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound decision; it is whether the real reason is [discrimination]." <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting <u>Carson v. Bethlehem Steel Corp.</u>, 82 F. 3d 157, 159 (7th Cir. 1996)). GED, and specifically Beverly Pope ("Pope") decided to terminate Plaintiff Clifton Showell ("Showell") because he disclosed his IGS password to a subordinate in violation of a GED policy and, because at the time, Showell had been issued a final warning disciplinary notice on January 14, 2004 ("Final Warning") (A110). Although Showell may not agree with the decision or the reasons behind the decision, he was not terminated because of his age, race, or sex. Therefore, GED is entitled to an order granting it summary judgment and dismissing Showell's Amended Complaint.

Throughout his Answering Brief, Showell claims that Pope's decision to terminate him was motivated by age, sex, and race. Showell relies primarily on two arguments. First, he argues that he was replaced by Tracey Dorsey ("Dorsey"), a forty-one year old African-American female. Second, he argues that "other similarly situated" individuals received different treatment because they were not terminated. Yet, no where in his Answering Brief does he acknowledge that what he did – disclosing his IGS password to a subordinate – was wrong.

1

He ignores the fact that, at the time of his termination, he admitted Jay Lewis ("Lewis"), Director

of Security and Surveillance for GED, that he knew he was not permitted to disclose his IGS

password. (B1027)  Showell also ignores the fact that he testified at his deposition that he did not

believe Pope's decision to terminate him was based on his sex, age or race.

This Court's ultimate role under Title VII and Section 1981 is not to evaluate

whether the decision to terminate Showell was wrong, or even unfair.  It is to decide whether,

under the facts in the record, the reason for Showell's termination was, in reality, a mask hiding

some form of discriminatory animus toward Showell.  Because there is no evidence to suggest

that Pope made the decision to terminate Showell because of his age, race, or sex, his claims of

discrimination fail and GED is entitled to summary judgment.

## A.   SHOWELL CANNOT ESTABLISH A PRIMA FACIE CLAIM FOR DISCRIMINATION BASED ON HIS SEX, AGE, OR RACE.

Under the well-established McDonnell-Douglas Corp., 411 U. S. 792 (1973),

burden-shifting framework, in order for Showell to survive summary judgment, he must first

establish a *prima facie* showing of sex, age or race discrimination.  In order for Showell to

establish a *prima facie* claim of sex, age or race discrimination, he must establish that: (1) he is a

member of a protected class; (2) he was qualified for the position; and (3) he was subject to an

unfavorable employment action under circumstances that give rise to an inference of unlawful

discrimination.  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995).[1]  GED does not

dispute that Showell can satisfy the first two prongs necessary to establish *prima facie* of sex,

age or race discrimination.  Showell, at the time of his termination forty-seven years old, is an

African-American male and was qualified for the position of Slot Shift Manager.  GED does

---

[1] Claims of age, race, or sex discrimination are analyzed under the McDonnell-Douglas
framework.

2

058578.1009

dispute that Showell satisfies the last prong necessary to establish his *prima facie* case of age, race, or sex discrimination. Showell cannot prove that the circumstances surrounding his termination give rise to an inference of unlawful discrimination based on his age, race, or sex.

In Showell's Answering Brief, he acknowledges for the first time that Pope, an African-American female, approximately 48 years old at the time of Showell's termination, was the individual who made the decision to terminate him.[2] (Ans. Br. at pg. 8) This admission significantly weakens Showell's claims of discrimination. First, because Showell testified that he does not believe Ms. Pope was biased toward him or African-Americans, older individuals, or males in general, cannot support his claim any inference of discrimination. Second, because Pope interviewed, hired, and promoted Showell throughout his career with GED. And although this fact alone is not dispositive, it is strong evidence that contradicts a conclusion that Showell was terminated under circumstances that create an inference of discrimination. Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996)(The fact that the actor involved in both employment decisions is also a member of a protected class enhances the inference); Mosberger v. CPG Nutrients, C.A. No. 01-100, 2002 U.S. Dist. LEXIS 22254, (W.D. Pa. Sept. 6, 2002); Richter v. Hook-SupeRx, Inc., 142 F.3d 1024,1032 (7th Cir. 1998) (no discrimination where decision maker same age as or older than plaintiff); Connell v. Consolidated Edison Co. of N.Y., Inc., 109 F. Supp. 2d 202 (S.D.N.Y. 2000). Therefore, based on these uncontested facts, Showell cannot establish a *prima facie* case of sex, age or race discrimination.

Furthermore, the only other Slot Shift Manager who admitted to violating GED's policy by disclosing her IGS password, Sabrina Jenkins ("Jenkins"), was terminated after she

---

[2] In his Amended Complaint, Showell alleged that Scott Saxon ("Saxon") a Caucasian male approximately forty years old and Lewis, a Caucasian male approximately forty-five years old made the decision to terminate Showell. Amended Complaint. at ¶ 27-28.

3

received a final warning from Pope, thereby negating any inference of discrimination. McIntyre v. City of Wilmington, C.A. 01-396, 2002 U.S. Dist. LEXIS 14569 * 14 (D. Del. July 9, 2002) (finding that the termination of a Caucasian employee subsequent to the termination of the African-American employee negates any inference of unlawful discrimination). These facts, taken as a whole, negate any inference that Showell's termination was based on his sex, age or race.

### 1.     Showell Cannot Establish A *Prima Facie* Case Of Sex Discrimination.

Showell alleges his Answering Brief that he has established a *prima facie* case of sex discrimination because: 1) he was replaced by a female, Dorsey, and 2) because similarly situated females were treated more favorably than he was. First, the fact that a female replaced Showell does not, without more, create an inference that his termination was based on his sex. Second, the other non-members Showell identifies as being treated more favorably than him were not similarly situated and, therefore, cannot be compared to Showell to create an inference of sex discrimination. "The determination of whether other employees are 'similarly situated' requires the court to undertake a fact-intensive inquiry on a case-by-case basis." Gaetano v. Bayer, Inc. C.A. No. 04-1812, 2007 U.S. Dist. LEXIS 82971 *15-16 (W. D. Pa. 2007) (citing Monaco v. Am. Gen. Assur. Co., 359 F3d 296, 307 (3d Cir. 2004)).

According to Showell, Jenkins; Brandy Shahan ("Shahan"), a Lead Slot Attendant; and Nicole Maker ("Maker"), a Slot Attendant, *disclosed* their IGS passwords but were not terminated. Showell also alleges that Maker, Georgia Kimball ("Kimball"), Joyce, and Patty Robinson ("Robinson"), all Slot Attendants, *used* their supervisors IGS passwords but were not terminated. "In order for an employee to be considered similarly situated, for the purposes of showing disparate treatment in Title VII cases, the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the . . . employees whom he

4

alleges were treated more favorably.'" Miller v. State of Del., 158 F. Supp. 2d 406, 411 (D. Del. 2001)(quoting Allen v. Ohio Department of Rehabilitation and Correction, 128 F. Supp. 2d 483, 492 (2001)). "In other words, to be deemed similarly situated, the individual with whom a plaintiff to seeks to be compared must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Anderson v. Haverford College, 868 F. Supp. 741, 745 (E.D. Pa. 1994); Aljadir v. Substitute Teacher Service, C.A. No. 02-464 GMS, 2004 U.S. Dist. LEXIS 19879 (D. Del. Oct. 5, 2004) (quoting Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F. 3d 639, 647 (3d Cir. 1998) ("In determining whether similarly situated non-members of a protected class were treated more favorably than a member of a protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.") Because none of the seven individuals identified by Showell are similarly situated to him, they cannot be used as comparators.

Pope decided to terminate Showell because he disclosed his IGS password to a subordinate and because, at the time this was discovered, he already had the Final Warning in his personnel file. In contrast, none of the seven females identified as comparators by Showell had a final warning in their personnel file at the time it was discovered that IGS passwords were being disclosed by Slot Shift Managers.[3] Furthermore, only one of the individuals identified by Showell – Jenkins – was a Slot Shift Manager and directly supervised by Pope. Shahan was a lead slot attendant and not directly supervised by Pope. Maker, Kimball, Joyce, and Robinson were slot attendants and only used a supervisor's password. None of the slot attendants

---

[3] Although Showell makes much of the fact that Pope testified that Jenkins had no prior disciplinary record at the time Showell was terminated, when, in fact, based on a review of Jenkins personnel file she did, none of the prior disciplinary notices were considered a final warning.

disclosed their IGS passwords nor did any one the slot attendants have any supervisory authority. The slot attendants were limited in what their IGS passwords allowed them to do as compared to Showell. For example, the slot attendants were only authorized, through their IGS passwords, to pay jackpots up to $1,999.00 whereas Showell could authorize the payment of jackpots greater than $50,000.00. The decision to terminate Showell was based on such different circumstances from the seven identified comparators, that they cannot be similarly situated.

> ### 2.    Showell Cannot Establish A *Prima Facie* Case Of Age Discrimination.

As to Showell's age discrimination claim, Showell argues that because Dorsey is substantially younger (6 years) than Showell, he has established a prima facie case of age discrimination. As Showell correctly notes in his Answering Brief, there is no bright-line age difference that satisfies the "sufficiently younger" standard for establishing a *prima facie* case of age discrimination. Whether an individual is "sufficiently younger," for purposes of proving a *prima facie* case of age discrimination depends on the particular facts of a case. Richter, 142 F.3d at, 1028-1029. Circuit Courts have concluded that ten years or less is generally insufficient to establish a prima facie case of age discrimination. Id. The Sixth Circuit has concluded that six years or less is insufficient to establish a *prima facie* case of age discrimination, Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003). Standing alone, the six year age difference between Dorsey, who was also over forty at the time of Showell's termination, and Showell is insufficient to establish a *prima facie* case of age discrimination. Showell did not lose his position because of his age. Showell was terminated because he admitted to violating a GED policy by disclosing his IGS password to a subordinate. The fact that he was replaced by someone younger, without more, does not raise an inference of age discrimination. Therefore, Showell cannot establish a *prima facie* case of age discrimination.

6

### 3.   Showell Cannot Establish A *Prima Facie* Case Of Race Discrimination.

Showell also cannot establish a *prima facie* case of race discrimination. Showell claims that because Shahan, Kimball, Chisholm, Joyce, and Robinson were not terminated, this establishes his *prima facie* case of race discrimination. First, the decision to terminate Showell was made by Pope, an African-American. Second, Pope replaced Showell with an African-American. Although the fact that an African-American terminated Showell and an African-American replaced Showell may not be dispositive, it significantly undermines Showell's claim that he was terminated because he is African-American.

Showell also alleges that Shahan, Kimball, Chisholm, Joyce, and Robinson, non-members allegedly similarly situated to Showell were treated more favorably than him because they were not terminated. For the same reasons stated above, the comparators identified by Showell in support of his *prima facie* case of age discrimination were not similarly situated to Showell, they cannot be used as comparators as support for his *prima facie* claim of race discrimination. Furthermore, even if these individuals were similarly situated, he cannot selectively choose the Caucasian employees who were not terminated and ignore the African-American employees who were also not terminated as support for his *prima facie* claim of race discrimination.

If the slot employees Showell compared himself to, Jenkins and Maker are African-American and were also not terminated.

Showell has failed to articulate any facts in the record giving rise to an inference of discrimination based on his sex, age or race. Showell's mere allegation that he was treated unfairly because he is an older African-American male is simply insufficient to create the required discriminatory inference. Quiroga v. Hasbro, 934 F.2d 497, 500 (3d Cir. 1991). As a

7

result, he has failed to carry his burden of to establish a *prima facie* case of discrimination and GED is entitled to summary judgment.

**B.    SHOWELL DOES NOT CAST SUFFICIENT DOUBT UPON THE LEGITIMATE, NON-DISCRIMINATORY REASON FOR HIS TERMINATION.**

GED's decision to terminate Showell was based on a legitimate non-discriminatory business reason. GED terminated Showell because he admittedly disclosed his confidential IGS password to a subordinate against GED policy and, at the time he did so, he had the Final Warning in his personnel file. Furthermore, Showell had become a problem employee, receiving more than nine disciplinary notices in the eleven months leading up to his termination. In his Answering Brief, Showell does not argue that the articulated reason by GED for his termination is not a legitimate, non-discriminatory reason. Therefore, Showell concedes that the decision to terminate him was based on a legitimate, non-discriminatory business reason. As a result, the presumption of discrimination is dropped from the case and the burden shifts to Showell to prove that, by a preponderance of the evidence, that the stated reason was actually a pretext to mask any discriminatory basis for his termination.

Summary judgment for the defendant is appropriate where the plaintiff cannot raise genuine questions about the legitimacy of the employer's articulated reason for terminating the plaintiff. Mauro v. Southern New England Telecomms., 208 F.3d 384 (2d Cir. 2000). See also Richter, 142 F.3d at 1030-31 (summary judgment granted where plaintiff offered no evidence that defendant's reasons for discharging him were unworthy of belief). If the plaintiff argues that the employer's articulated reason legitimate reason is not true, the plaintiff cannot survive summary judgment by arguing that the employer's decision was wrong or mistaken. Warner v. FedEx Ground Package System, Inc., 2005 U.S. App. LEXIS 8173 **5 (3d Cir. 2005). Instead, he must demonstrate that the reason was so wrong that the proffered reason could not

8

have been the real reason. Id. To do so, Showell must present evidence that establishes that either: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendants so that a fact finder could reasonably conclude that each reason was a fabrication; or 2) allows the fact finder to infer that discrimination was more likely than not a motivating factor or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F. 3d 759, 762 (3d Cir. 1994). Because the arguments asserted by Showell in response to GED's Motion for Summary Judgment do not satisfy either of the two prongs of Fuentes, GED is entitled to summary judgment.

    **1.**    **Showell Does Not Cast Sufficient Doubt Upon The Legitimate Reason Proffered By GED To Allow The Fact Finder To Conclude That The Reason Was Fabricated.**

Showell initially argues that the legitimate reason articulated by Pope for deciding to terminate According to Showell, because GED did not have a written policy against a Slot Shift Manager disclosing an IGS password to a subordinate, the real reason for his termination bas because of his sex, age or race. First, although there was no written document that stated, "Do not give out your IGS password," it is not true that there was no policy against disclosing the IGS password. During the training provided to the slot employees, they were instructed to keep their passwords as confidential as they would keep their ATM passwords. (Dep. Tr. B. Pope at p. 41, 43, A19, A21; Dep. Tr. S. Jenkins at p. 31; A107). Moreover, at the time of the investigation, Showell admitted that he knew he was not supposed to give out his IGS password to anyone, including other GED employees. (Dep. Tr. C. Showell at p.175-182; A69-A76; Dep. Tr. S. Saxon at p. 69; A142)

Next, Showell claims that the final warning he received on January 14, 2004 was "fabricated." This claim is ridiculous. Pope issued the Final Warning. She testified that the signature on the document was hers. (Dep. Tr. B. Pope at p. 73; B0403). She testified that the

        

notation on the Final Warning regarding Showell's refusal to sign the Final Warning was her handwriting. (Dep. Tr. B. Pope at p. 76; B0406). She also testified that she was not out of town the week of January 11th. (Dep. Tr. B. Pope at p. 73; B0403). The only conflicting testimony is Showell's own self serving testimony claiming that he did not know about the Final Warning and that Pope was out of the town the week of January 11th. Showell, however, admits that he committed the offense which the Final Warning is based – missing a mandatory meeting on January 11, 2004.

Showell also alleges that the basis for his termination was not as GED stated but was merely a pretext to mask discrimination was that Pope knew that Jenkins and Bob Schueler disclosed their IGS passwords prior to the incident on February 29, 2004 and took no steps to correct it. Pope testified that she did not know that slot employees were disseminating their passwords until after Kimball had been caught using Showell's password (Dep. Tr. B. Pope at p. 50-51; A25-A30). As support for Showell's assertions, he directs the Court to his own deposition testimony as well as the testimony of Jenkins, Robinson, and Kimball. However, none of them testified that Pope knew prior to the end of February 2004 that slot personnel were disclosing their passwords. Jenkins was asked at her deposition by counsel for Showell:

Q:     "At some point did Beverly Pope become aware that Showell had shared your passwords?"

A:     "Yes."

Q:     "And after she became aware of it, is that when you received your written warning?"

A:     "Actually, I was questioned by Jay Lewis, and then following that, that's when I received my written warning."

(Dep. Tr. S. Jenkins at p. 27-28; B0478-B0479) Robinson was asked, "*Eventually* did Beverly Pope become aware that these folks, including Bob Schueler before he passed away, Clifton Showell, Sabrina Jenkins and Brandy Shahan had given out their IGS passwords?"(emphasis added) (Dep. Tr. Robinson at p. 31; B0588) Furthermore, Kimball testified that she was not aware of anyone telling Pope that slot personnel were sharing IGS passwords. Kimball testified that she "assumed" Pope knew. (Dep. Tr. G. Kimball at p. 20-21; B0515-B0516). At no point do Jenkins, Robinson, or Kimball testify that Pope knew prior to February 29th that Jenkins or Schueler had disclosed their passwords despite the representations by Showell. Therefore, no weight can be given to Showell's argument.

Showell argues that other female supervisors who disclosed their IGS passwords were not terminated even though they committed the same offense. Although it is true that Jenkins, Shahan, and Maker were not terminated, it is also true that these three individuals did not have final warnings in their disciplinary files like Showell. Furthermore, each of these individuals was disciplined for their actions by receiving final warnings. Furthermore, Jenkins and Kimball were both eventually terminated because of a subsequent policy violation.

Lastly, Showell alleges that GED's alleged failure to, in practice, maintain the security of the IGS passwords negates the importance of slot shift managers maintaining the confidentiality of their IGS passwords thereby proving that the real reason for his termination was based on his sex, age or race. Showell directs the Court to John Ruffin's ("Ruffin") testimony for proof that GED did not maintain the confidentiality of IGS passwords. According to Ruffin, GED posted passwords on the inside the main cage where all of the supervisors could see them. (Dep. Tr. J. Ruffin at p. 51; B0721). First, he does not specify whether they were IGS passwords posted inside the main cage. Second, assuming that they were IGS passwords posted,

he testified that only other supervisors had the ability to see them, not subordinates. Lastly, and more importantly, he testified that regardless of whether the passwords were posted in the main cage, it was a violation of GED's policy for a slot shift supervisor to give out his/her password. (Dep. Tr. J. Ruffin at p. 53; B0723).

Showell's "evidence" does not cast sufficient doubt upon the legitimate, non-discriminatory reason articulated by GED for his termination. A fact finder could not reasonably conclude that the basis for Showell's termination was fabricated with the purpose of masking discrimination. As a result, Showell cannot satisfy his burden under McDonnell-Douglas of showing that GED's reason for terminating Showell was merely pretextual, therefore, GED is entitled to summary judgment.

2.      **Showell Has Not Presented Evidence That Would Allow A Fact Finder To Infer That The Decision To Terminate Him Was Motivated By Discrimination.**

If the plaintiff seeks to overcome the employer's proffered non-discriminatory reasons by arguing that discrimination played a motivating role in the employer's decision, the plaintiff must point to evidence that proves discrimination in the same way that facts are generally proven – based solely on the natural probative force of the evidence. Warner at **6. The plaintiff must point to evidence from which a fact finder could reasonably infer that the employer did not actually rely upon the stated criterion. Simpson at 647. Showell does not direct this Court to any evidence from which a fact finder could reasonably infer that the decision by GED to terminate Showell was, in reality, motivated by his sex, race, or age.

Pope made the decision to terminate Showell. It was made after GED discovered that Kimball used Showell's IGS password to correct a short pay to a GED customer. When Showell was questioned by Lewis, Showell responded by admitting that he knew it was a

12

violation of GED policy to disclose his IGS password but he did so for customer service reasons

and because he could not get his work done in a timely manner.  Despite Showell's admission

that he violated a GED policy, Showell claims that the decision to terminate him was motivated

by discriminatory reasons.  In an effort to persuade the Court that GED is not entitled to

summary judgment, Showell argues that circumstantial evidence exists to support his argument

that the real reason GED terminated him was because he is an African-American male in his

forties.

> **a.  Showell's "Evidence" Of Sex Discrimination Is Insufficient To Allow A Fact Finder To Infer That He Was Terminated Because Of His Sex.**

Showell has not pointed to any evidence that would permit a fact finder to infer

that his termination was motivated because of his sex.  First, Showell argues that because

Dorsey, a female, was promoted to Slot Shift Manager to replace Showell and other "similarly

situated" females were treated more favorably than him, the real reason for Pope's decision to

terminate him was his sex.  For the reasons discussed above, the fact that Dorsey replaced

Showell and other females who were not similarly situated to Showell at the time of his

termination and who were subsequently terminated does not suggest that Pope terminated

Showell because of his sex.

Lastly, Showell claims that Pope was biased against males.  However, he presents

no evidence in support of such a claim.  In fact, the evidence supports a contrary conclusion.

Pope hired and promoted Showell. (Opening Brief at p. 2-3) Showell admits that Pope gave him

favorable evaluations during his tenure with GED. (Amended Complaint at ¶ 14; A3; Ans. Br. at

p. 4)  Pope also hired and promoted numerous other males, including Jonathan Russ, Daryl

Nashold, and Schueler.  Showell refers to Flores's testimony as evidence that Pope was biased

against males.  However, Flores testified that he was terminated by the human resources

13

department, not Pope.[4]  As further support of his allegation that Pope was biased against males,

Showell insinuates that Pope only terminated *male* employees – directing the Court to Pope's

testimony that she terminated "Tony Williams and one other man." (Ans. Br. at 29)  He failed,

however, to note that Pope also fired three females during her tenure as Director of Slot

Operations, "Regine," an African-American female; (Dep. Tr. B. Pope at p. 100; B0430);

Kimball (Dep. Tr. B. Pope at p. 101; B0431); and Jenkins (Dep. Tr. B. Pope at p. 105; B0435).

       Showell's "evidence" that his termination was motivated by his sex falls short of

meeting his burden of persuasion.  The real and only reason Showell was terminated was because

he committed a serious violation of GED policy and because he had the Final Warning in his

personnel file.  It was not because of his sex.

         **b.**      **Showell's "Evidence" Of Race Discrimination Is Insufficient To Allow A Fact Finder To Infer That He Was Terminated Because Of His Race.**

       Showell argues that because Caucasians were not terminated for disclosing or

using IGS passwords that the decision to terminate him was actually based on his race.  His

argument, however, ignores two important facts.  First, Pope, an African-American, was the

person who decided to terminate Showell.  Second, although he fails to mention it in his

Answering Brief, Shahan, Jenkins, Maker, and Kimball were all disciplined and Jenkins and

Kimball were eventually terminated.  In addition, Pope issued a memo to every slot employee,

whether they had disclosed or used someone else's IGS password or not, informing them that if

any slot employee was caught disclosing his/her IGS password, they would be terminated.

       Showell's reliance on workplace statistics also does not cast sufficient doubt that

the reason for his termination was based on his race.  Showell argues that sixty percent of the

---

[4] Flores was terminated after a female employee accused him of demanding sexual favors in exchange for a more favorable review. (Dep. Tr. M. Flores at p. 52; B0827).

14

Slot Shift Managers were Caucasian, he does not, however, identify the individuals considered, the time frame, or the methods for his statistical analysis. In contrast, GED's statistical analysis submitted in response to Showell's charge of discrimination, showed that after his termination, there were six (6) Slot Shift Managers and of the six, three were African-American, and three were Caucasian. (C 1). Furthermore, Showell relies on the testimony of Ruffin that "there was a serious discrimination problem." (Ans. Br. at 30)  These are not "facts" sufficient to create an inference that Showell's termination was based on his race or that GED discriminated against African-Americans.

> **c.    Showell's "Evidence" Of Age Discrimination Is Insufficient To Allow A Fact Finder To Infer That He Was Terminated Because Of His Age.**

Showell relies on the same evidence that his termination was motivated by his age as he relied upon as support for his *prima facie* case of age discrimination – the fact that his replacement was forty-one and that younger slot employees were not terminated. Although these facts may be sufficient to establish a *prima facie* case of discrimination, they are not sufficient to establish that his termination was actually motivated by his age. Simpson, 142 F. 3d at 646 (at the pretext stage, the factual inquiry into the alleged discriminatory motives rise to a new level or specificity over the factual inquiry at the *prima facie* stage). There is nothing that shows age was a motivating factor in the decision to terminate him.

Showell testified that he did not think that Pope discriminated against him based on his age. Furthermore, Jenkins and Shahan, the other slot supervisors who admitted to disclosing their IGS passwords, received final warnings and Jenkins was subsequently terminated by Pope. Kimball and Maker, the Slot Attendants who admitted to using their supervisors' IGS passwords, were also issued final warnings and Kimball was eventually

15

terminated. This evidence is not compelling enough to convince a trier of fact that Showell was terminated because of his age.

> **d.    Showell's "Other Evidence" Of Discrimination Does Not Overcome The Legitimate, Non-Discriminatory Reason For Showell's Termination.**

Showell argues "factors usually considered were ignored" in support of his argument that the real reason for his termination was discrimination. He argues that GED ignored that fact that: 1) GED installed a new computer system with passwords; 2) many supervisors disclosed their passwords to subordinates; 3) Showell's female subordinate wrongfully used his password without his presence, knowledge, or consent, and 4) GED's investigation revealed multiple supervisors' violations. (Ans. Br. at 30) Most of the "factors" noted by Showell have been addressed elsewhere throughout GED's Opening and Reply Briefs. The only "new" factor is the installation of a new computer system with passwords. First, it is not accurate that prior computer systems used by GED did not have passwords. Second, the installation of a new computer system does not mean that GED employees could ignore the policies established without any consequence. Lastly, Showell does not direct this Court to any support for his argument that any of the factors are "usually consider" or even should have been in determining whether to terminate Showell.

Showell also argues that GED failed to follow its progressive disciplinary policy when it made the decision to terminate Showell. As was discussed in GED's Opening Brief, the progressive disciplinary policy did not have to be followed in lock-step. The policy was a flexible one designed to address various disciplinary issues as GED and its supervisors felt appropriate. Showell could have been terminated in March 2004 whether he had a final warning in his personnel file or not. The fact is, however, that he did have the Final Warning in his personnel file along with nine other disciplinary notices over the eleven months prior to his

16

termination. There is no indication or evidence that GED failed to follow its progressive

disciplinary policy or, if it did, that the failure to follow it was because of Showell's age, race, or

sex. Furthermore, whether GED followed the progressive disciplinary policies as written does

not create a claim for discrimination. E.E.O.C. v. Rite Aid Corporation., C.A. No. 03-CV-777-

GMS, 2005 U.S. Dist. LEXIS 32898 (D. Del. Dec. 12, 2005). Showell was an employee at-will.

As such, he could be fired with or without cause.

## C.    GED IS ENTITLED TO SUMMARY JUDGMENT ON SHOWELL'S CLAIMS OF SEX AND RACE DISCRIMINATION IN THE TERMS AND CONDITIONS OF HIS EMPLOYMENT

### 1.    Showell Cannot Show That He Was Discriminated Against In The Terms And Conditions Of His Employment Based On His Sex.

Showell cannot point to any facts that support his claims that he was

discriminated against based on his race or sex in the terms and conditions of his employment. In

his Answering Brief, Showell argues that he was discriminated based on his sex because he was

denied a demotion to a non-management position because of a medical condition when other

female employees with medical issues were allegedly granted demotions. This argument fails

for two reasons. First, as indicated in GED's Opening Brief, Showell's factual allegations are

incorrect. Showell was not denied a demotion request nor was he forced to take an unpaid

medical leave when he had to undergo dental surgery to have his teeth removed. (Dep. Tr. S.

Saxon at p. 51-53; A132-A134; Dep. Tr. B. Pope at p.92-93; A39-A40; Dep. Tr. C. Showell at

p.209; A77) Furthermore, his claim that two female managers were permitted to take a demotion

because of medical reasons is also not true. Neither Regina Burrell or Sonja Clendaniel

requested a demotion as a result of their respective medical conditions nor did they receive a

demotion because of their medical conditions. (Dep. Tr. S. Saxon at p. 58-62; A137-A141)

Second, even if Showell was denied a demotion, this allegation is insufficient to form the basis

17

for a discrimination charge.  The alleged denial of a demotion cannot be considered an adverse job action.  See e.g., Bell v. Waste Mgmt., Inc., No. 03-992-KAJ, 2004 U.S. Dist. LEXIS 21864, at *12 (D. Del. Oct. 29, 2004); see also, Stavropoulos v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004) (failure to show adverse employment action was fatal to plaintiff's claim); Lewis v. Okla. ex rel. Bd. of Regents, 42 Fed. App'x. 160, 167 (10th Cir. 2002) (summary judgment was appropriate where plaintiff failed to show adverse employment action).  Therefore, Showell's claim of sex discrimination based on his terms and conditions fails and GED is entitle to summary judgment.

### 2.    Showell Cannot Show That He Was Discriminated Against In The Terms And Conditions Of His Employment Based On His Race.

Showell cannot point to any evidence that supports his claim that he was discriminated against based on the terms and conditions of his employment because of his race. Showell argues that Caucasian Slot Shift Managers William Bates and Daryl Nashold were not disciplined for using public restrooms as opposed to the employee restrooms but Showell while Showell was disciplined for the same offense.  First, Showell points to no evidence, other than his own deposition testimony, that other Caucasians were not disciplined for using a public restroom.  Second, according to Showell, an employee in surveillance issued the disciplinary notice, not Pope.  This "fact" does not establish that he was discriminated against based on the terms and conditions of his employment.

Next, Showell argues in support of his claim that GED transferred Rosetta Loper ("Rosetta") from her position as a slot attendant to the cashier's cage after Showell married Rosetta's mother, Yvonne Loper ("Yvonne").  GED has a policy that did not allow relatives to supervise other relatives.  When Showell married Yvonne, Showell was not permitted to supervise Rosetta.  As a result, Rosetta was transferred to the cashiers cage.  This fact does not

18

create a claim of race discrimination. Furthermore, even if it did create a claim of race

discrimination, it would not be for Showell. The transfer of Rosetta did not have any adverse

employment action against Showell. He remained in his position as a Slot Shift Manager and did

not suffer any decrease in salary, benefits, or responsibilities. As a result, Showell cannot

establish a claim of race discrimination in the terms and conditions of his employment.

**D.    GED WITHDRAWS ITS ARGUMENT THAT SHOWELL DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES BASED ON THE NEWLY PRODUCED RIGHT TO SUE NOTICE.**

In response to GED's argument that Showell failed to exhaust his administrative

remedies, Showell attached a copy of the Federal Right to Sue Notice ("Notice"). This Notice

was not produced by Showell in response to GED's request for production nor identified in his

responses to GED's interrogatories. Furthermore, when Showell was questioned at his

deposition as to whether he had ever received a Federal Right to Sue Notice, Showell testified

that he was not sure. (Dep. Tr. C. Showell at p. 284; A79). Despite Plaintiff's counsel's

suggestion in his Answering Brief, footnote 31, that the argument was "suspect," GED would not

have made the argument had the Notice had been produced in discovery instead of Showell

assuming that GED had a copy of it. With that being said, GED withdraws this argument in light

of the produced Notice.

19

## CONCLUSION

For the reasons set forth above, GED respectfully requests that summary judgment be granted and Plaintiff's Amended Complaint be dismissed in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Seth J. Reidenberg

Seth J. Reidenberg, Esquire (I.D. No. 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6706
Facsimile: (302) 576-3442
Email: sreidenberg@ycst.com
*Attorneys for Defendant Gaming Entertainment (Delaware)L.L.C.*

Dated:  March 24, 2008